Terry **HARRIS**, Plaintiff,

v.

**WAREHOUSE SERVICES, INC.,**
**a corporation, Defendant.**

**No. Civ.A. 98–D–1118–N.**

United States District Court,
M.D. Alabama,
Northern Division.

Nov. 29, 1999.

Thomas D. Simon, Montgomery, AL, Valerie M. Smedley, Montgomery, AL, for plaintiff.

Thomas S. Lawson, Jr., Barbara J. Gilbert, Montgomery, AL, Melvin R. Hutson, Greenville, SC, for defendant.

## MEMORANDUM OPINION AND ORDER

DE MENT, District Judge.

Before the court is Defendant Warehouse Services, Inc.'s ("WSI" or "Defendant") Motion For Summary Judgment ("Mot.") along with its Memorandum In Support ("Def.'s Mem."), both filed September 1, 1999. Terry Harris ("Plaintiff" or "Harris") filed a Response To Defendant's Motion For Summary Judgment ("Resp.") on September 22, 1999. WSI filed a Reply Memorandum ("Reply") on October 1, 1999. After careful consideration of the arguments of counsel, the relevant law, and the record as a whole, the court finds that Defendant's Motion For Summary Judgment is due to be denied in part and granted in part.

## I. JURISDICTION AND VENUE

The court properly exercises subject matter jurisdiction over this action pursu-

**1242**

ant to 28 U.S.C. § 1331 (federal question), 28 U.S.C. § 1343 (civil rights), 42 U.S.C. § 2000e–5 (Title VII of the Civil Rights Act of 1964, as amended), and 42 U.S.C. § 1981(a) (Civil Rights Act of 1866, as amended). The Parties do not contest personal jurisdiction or venue.

## II. SUMMARY JUDGMENT STANDARD

On a motion for summary judgment, the court is to construe the evidence and factual inferences arising therefrom in the light most favorable to the nonmoving party. *See Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). Summary judgment can be entered on a claim only if it is shown "that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(c). As the Supreme Court has explained the summary judgment standard:

> [T]he plain language of Rule 56(c) mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. In such a situation, there can be no 'genuine issue as to any material fact,' since a complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial.

*Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986) (citing Fed.R.Civ.P. 56(c)).

The trial court's function at this juncture is not "to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 249–50, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986) (citations omitted). A dispute about a material fact is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party. *See Anderson,* 477 U.S. at 248, 106 S.Ct. 2505; *see also Barfield v. Brierton,* 883 F.2d 923, 933 (11th Cir.1989).

The party seeking summary judgment has the initial burden of informing the court of the basis for the motion and of establishing, based on relevant "portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' " that there is no genuine issue of material fact and that the moving party is entitled to judgment as a matter of law. *Celotex,* 477 U.S. at 323, 106 S.Ct. 2548 (citing Fed. R.Civ.P. 56(c)). The mechanics of satisfying the initial burden vary, however, depending upon which party, the movant or the nonmovant, bears the burden of proof at trial. *See Fitzpatrick v. City of Atlanta,* 2 F.3d 1112, 1115 (11th Cir.1993) (detailing the nature of the parties' responsibilities when preparing or defending against a motion for summary judgment).

Once this initial demonstration under Rule 56(c) is made, the burden of production, not persuasion, shifts to the nonmoving party. The nonmoving party must "go beyond the pleadings and by [his or] her own affidavits, or by the 'depositions, answers to interrogatories, and admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.' " *Celotex,* 477 U.S. at 324, 106 S.Ct. 2548 (citing Fed.R.Civ.P. 56(e)). In meeting this burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to the material facts." *Matsushita Elec. Indus. Corp. v. Zenith Radio Corp.,* 475 U.S. 574, 586, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986). That party must demonstrate that there is a "genuine issue for trial." Fed.R.Civ.P. 56(e); *see also Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348; *Anderson,* 477 U.S. at 249, 106 S.Ct. 2505. An action is void of a material issue for trial "[w]here the record taken as a whole could not lead a rational trier of fact to find for the non-moving party." *Matsushita,* 475 U.S. at 587, 106 S.Ct. 1348.

## III. FACTUAL BACKGROUND AND PROCEDURAL HISTORY

Plaintiff applied to work for Defendant in August, 1997. He was subsequently hired by Defendant and began working on August 12, 1997. (Answer ¶ 5.) Plaintiff worked for Defendant until January, 1998, when his employment was terminated. (Compl.¶ 11.)

WSI provides general warehouse and transportation services for General Electric ("GE") in Burkville, Alabama. (Combs Aff. ¶ 4.) Among other things, those services include operating GE's on-site railyard. (Id. ¶ 5.) Non-supervisory and non-clerical employees are classified as Material Handlers. (Id. ¶ 14.) WSI's material handlers may work on either rail crew or staging. Entry level rail crew employees work as members of the wash crew, which requires little training. (Id. ¶ 6.) Their job is to pressure wash the insides of rail cars and tanker trailers. (Id.) Rail crew employees with more training may work on the "shuttle crew," moving rail cars around the rail yard. (Id. ¶ 5.) Members of the staging department may perform a number of different duties, including the operation of a forklift. If one is hired as a material handler, he or she may be asked to perform a number of different tasks, including both wash crew and staging duties. (Id. ¶ 15; Combs Aff. Ex. 1.) After material handlers complete 100 hours of training, they are eligible to work on the shuttle crew. (Harris Dep. at 16.) Employees that complete the training for shuttle crew receive a $1.00 per hour raise. (Combs Aff. ¶ 8–10.)

Plaintiff applied to work for Defendant by filling out an application for employment on August 6, 1997. On his application, Plaintiff wrote that he desired a job as a "forklift operator." (Combs Aff.Ex. 2.) WSI employee Bart Brooks interviewed and hired Plaintiff on or about August 12, 1997, giving Plaintiff the impression that he would start on the rail crew. (Combs Aff. ¶ 15; Washington Dep. at 17.) After a couple days of orientation, Defendant assigned Plaintiff to the wash crew. (Id.;

Harris Dep. at 10–11.) On or about August 15, 1997, after at least two days on the wash crew, Defendant transferred Plaintiff to the staging crew to work as a forklift operator. (Harris Dep. at 10.) Plaintiff received the same pay with the staging crew as he did with the wash crew. (Id. at 16.)

After his transfer, Plaintiff often spoke with his new supervisor, Ron Washington ("Washington"), about moving back to the wash crew. (Id. at 14.) Plaintiff was told that WSI needed help with the staging crew. (Washington Dep. at 18.) Plaintiff claims that Washington told him that WSI did not have any openings in rail crew for Plaintiff. (Harris Dep. at 14.)

WSI posted a job opening for a position with the shuttle wagon crew on August 14, 1997, immediately before Plaintiff's transfer from wash crew. (Combs Aff.Ex. 5.) WSI only received two applications for this position, one of which was from James Cottle ("Cottle"). Plaintiff did not apply for the shuttle wagon crew position. (Harris Dep. at 14.) Cottle, a white male, had worked for WSI for five years and he was eventually hired for the shuttle wagon crew position. (Combs Aff.Ex. 7.)

On September 3, 1997, WSI posted a second job opening for a position with the shuttle wagon crew. The only person to apply for the September 3 posting was Warren Casey ("Casey"), a white male; Plaintiff did not apply. (Def.'s Mem. at 7; Harris Dep. at 14; Combs Aff.Ex. 9.) Though Casey had only been an employee of WSI for one month, he was hired for the position on the shuttle wagon crew. (Def.'s Mem. at 7–8.)

Plaintiff continued to work as a forklift operator on the staging crew until his employment was terminated in January, 1998. (Harris Dep. at 12.) On December 1, 1997, Plaintiff requested to use his "floating holiday" to take December 31, 1997, as a vacation day. (Id. at 34.) However, on December 2, 1997, Defendant posted a memorandum to all employees which stated that no vacation requests would be

approved for the days of December 22, 1997, through December 31, 1997. (Mot. Ex. J.) Defendant denied Plaintiff's request to take off work. (Harris Dep. at 34.) Subsequently, Plaintiff filed a charge of racial discrimination with the Equal Employment Opportunity Commission ("EEOC") on December 8, 1997. (Def.'s Mem. at 11.) Defendant became aware of Plaintiff's charge "on or before December 15, 1997." (*Id.*)

On December 28, 1997, Plaintiff approached his supervisor, Rodney Carl ("Carl"), and reported having pain in a tooth. (Harris Dep. at 39; Def.'s Mem. at 11.) Carl told Plaintiff that he could leave work to see a dentist but that he had to bring a "doctor's excuse" upon his return to work. (Harris Dep. at 39.) The next day, December 29, 1997, Harris saw his dentist in Enterprise, Alabama, and had a tooth pulled. (*Id.*; Mot.Ex. K.) Plaintiff's jaw was swollen, he could not immediately return to work. (Harris Dep. at 39.) He called in to work and talked to Carl, who told him to make sure he brought a doctor's excuse. (*Id.*) Plaintiff did not return to work until January 5 or 6, 1998, but claims he called in each day he was absent. (*Id.* at 43–44.)

Plaintiff had worked one day after returning on January 5 or 6, 1998, when he was called into a meeting. Plaintiff met with Carl and Randy Ryan in person, while Bart Brooks ("Brooks") conferenced in over the telephone. (*Id.* at 43.) They informed Plaintiff that he was suspended pending an investigation of his absence from work. (*Id.*) Approximately one week later, Brooks and Washington called Plaintiff into a meeting to inform Plaintiff he was terminated. (*Id.* at 44–45.)

Plaintiff filed this action on September 30, 1998. In his Complaint, Plaintiff alleges he was "discriminated against in the terms and conditions of his employment because of his race." (Compl.¶ 8.) On Sep-

tember 1, 1999, Defendant filed its Motion For Summary Judgment.

## IV. DISCUSSION

While Plaintiff's Complaint is somewhat disjointed, construing it broadly leads the court to find he has properly raised claims of disparate treatment, retaliatory termination, and hostile work environment. Such a liberal construction of Plaintiff's Complaint is required to ensure the provision of substantial justice to the adjudication of this case. *See* FED.R.CIV.P. 8(f) (stating that "[a]ll pleadings shall be so construed as to do substantial justice").

■ All of Plaintiff's claims fall under 42 U.S.C. § 1981 and Title VII of the Civil Rights Act of 1964. Section 1981 prohibits race discrimination in the making and enforcing of contracts and is a statutory remedy available in both public and private sectors.[1] *Johnson v. Railway Express Agency, Inc.,* 421 U.S. 454, 459–60, 95 S.Ct. 1716, 44 L.Ed.2d 295 (1975). Title VII prohibits an employer from discriminating "against any individual with respect to his compensation, terms, conditions, or privileges of employment because of such individual's race, color, religion, sex, or national origin." 42 U.S.C.A. § 2000e–2(a). The allocation of burdens and elements of a prima facie case are the same for employment claims stemming from Title VII and § 1981. *See Richardson v. Leeds Police Dept.,* 71 F.3d 801, 805 (11th Cir.1995); *Turnes v. AmSouth Bank, N.A.,* 36 F.3d 1057, 1060 (11th Cir.1994); *Howard v. BP Oil Co., Inc.,* 32 F.3d 520 (11th Cir.1994).

The critical element in establishing wrongful discrimination in violation of Title VII or § 1981 is discriminatory intent. *See St. Mary's Honor Center v. Hicks,* 509 U.S. 502, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993); *Watson v. Fort Worth Bank and Trust,* 487 U.S. 977, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988) (Title VII); *General*

---

1. 42 U.S.C. § 1981 provides in relevant part: "[a]ll persons within the jurisdiction of the United States shall have the same right in

every State and Territory to make and enforce contracts ... as is enjoyed by white citizens."

*Bldg. Contractors Ass'n., Inc. v. Pennsylvania,* 458 U.S. 375, 391, 102 S.Ct. 3141, 73 L.Ed.2d 835 (1982) (§ 1981); *Washington v. Davis,* 426 U.S. 229, 246–48, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976) (§ 1981); *Baldwin v. Birmingham Bd. of Educ.,* 648 F.2d 950, 954 (5th Cir.1981) (§ 1981).[2]

Discriminatory intent can be established through either direct or circumstantial evidence. *United States Postal Serv. Bd. of Gov. v. Aikens,* 460 U.S. 711, 714 n. 3, 103 S.Ct. 1478, 75 L.Ed.2d 403 (1983). After a thorough review of the pleadings and of the record, it appears to the court that Plaintiff is not arguing that there is direct evidence of discrimination. Although Plaintiff does not admit as much, all of his arguments are couched in terms of a circumstantial case. Where, as here, a plaintiff seeks to proved intentional discrimination through circumstantial evidence of the employer's intent, the court applies the familiar tripartite burden-shifting analysis articulated in *McDonnell Douglas Corp. v. Green* and *Texas Dept. of Comm. Affairs v. Burdine. See* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); 450 U.S. 248, 101 S.Ct. 1089, 67 L.Ed.2d 207 (1981).

Under this framework, the plaintiff has the initial burden of establishing a prima facie case of discrimination. *Combs v. Plantation Patterns,* 106 F.3d 1519 (11th Cir.1997) (citations omitted). The purpose of the prima facie case is to show an adverse employment decision that resulted from a discriminatory motive. *Perryman v. Johnson Products Co.,* 698 F.2d 1138, 1143 (11th Cir.1983). If the plaintiff meets this burden, he or she is entitled to a legal presumption that the defendant acted with discriminatory intent. *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089; *McDonnell Douglas,* 411 U.S. at 792, 93 S.Ct. 1817. The effect of this presumption is to shift to the employer the burden of producing a legitimate, nondiscriminatory reason for the challenged employment action. *Combs,* 106 F.3d at 1528 (citations omitted). This

intermediate burden is "exceedingly light." *Meeks v. Computer Assocs., Int'l,* 15 F.3d 1013, 1019 (11th Cir.1994); *Perryman,* 698 F.2d at 1142; *see also Turnes,* 36 F.3d at 1061. The defendant "need not persuade the court that it was actually motivated by the proffered reasons. It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff." *Combs,* 106 F.3d at 1528 (quoting *Burdine,* 450 U.S. at 254–55, 101 S.Ct. 1089); *see also Turnes,* 36 F.3d at 1061. Should the defendant fail to meet its burden of production once the plaintiff establishes his or her prima facie case, "the unrebutted presumption of discrimination stands." *Turnes,* 36 F.3d at 1061 (*citing Joshi v. Florida State Univ. Health Ctr.,* 763 F.2d 1227, 1236 (11th Cir.1985)).

If the employer satisfies this burden, however, the presumption of discrimination disappears from the case and the plaintiff must persuade the trier of fact that the employer's proffered reasons were pretextual and that the real reason for the adverse employment decision was, in fact, discriminatory. *Burdine,* 450 U.S. at 253, 256, 101 S.Ct. 1089. "[T]he plaintiff has the opportunity to come forward with evidence, including the previously produced evidence establishing the prima facie case, sufficient to permit a reasonable fact finder to conclude that the reasons given by the employer were not the real reasons for the adverse employment decision." *Combs,* 106 F.3d at 1528 (citations omitted). This may be accomplished by "either directly persuading the court that a discriminatory reason more likely motivated the employer or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Id.* at 1528. To survive summary judgment at this point, the plaintiff must come forward with evidence sufficient "to permit a reasonable fact finder to conclude that the employer's proffered non-discriminatory reasons were

---

**2.** Decisions of the former Fifth Circuit rendered prior to October 1, 1981, constitute binding precedent in the Eleventh Circuit.

*Bonner v. City of Prichard,* 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

not what actually motivated its conduct." *Id.* at 1528.

To establish a prima facie case under the aforementioned framework, Harris must present circumstantial evidence sufficient to create an inference that each employment-related decision was racially motivated. *See McDonnell Douglas,* 411 U.S. at 802, 93 S.Ct. 1817. The court will address each allegation individually.

## A. Claim Of Disparate Treatment In Promotion

Plaintiff contends that Defendant treated him differently because of his race. First, Plaintiff argues that Defendant treated him differently on the basis of his race by hiring a white male for a position for which Plaintiff was qualified and in which he expressed an interest. (Compl. ¶ 7; Resp. at 1.) The court construes Plaintiff's argument as alleging a failure to promote claim.[3] To establish a prima facie case of discriminatory failure to promote, Plaintiff must show: (1) that he is a member of a protected class; (2) that he was qualified for and applied for the promotion; (3) that he was rejected; and (4) that other equally or less qualified employees who are not members of the protected class were promoted. *Combs,* 106 F.3d at 1539 n. 11 *(citing Wu v. Thomas,* 847 F.2d 1480, 1483 (11th Cir.1988), *cert. denied,* 490 U.S. 1006, 109 S.Ct. 1641, 104 L.Ed.2d 156 (1989)).

It is undisputed that Plaintiff meets the first and third criteria of a prima facie case. Plaintiff is a black male. Accordingly, the court finds that he has established membership in a protected class, and, consequently, that he has satisfied the first prong. Additionally, it is clear from the record that Plaintiff was "rejected" from the position of shuttle wagon crew. Consequently, the court finds that Plaintiff meets the third prong of the prima facie case. Lastly, the court assumes without deciding that an equally or less qualified individual was given the position (fourth prong).[4] However, the court finds that Plaintiff cannot show that he either applied for the shuttle wagon crew position (second prong) or that he was excused from so doing.

On or about August 12, 1997, Defendant hired Plaintiff as a material handler and assigned him to the wash crew. (Combs Aff. ¶ 15; Harris Dep. at 10–11.) After only a couple days on the wash crew, Defendant reassigned Plaintiff to the staging crew to work as a forklift operator. (Harris Dep. at 10.) Positions on wash crew and staging paid the same and were both considered entry-level positions. (Washington Dep. at 19; Combs Aff. ¶ 14.) At about the same time, on August 14, 1997, Defendant posted a job opening for a position with the shuttle wagon crew. (Combs Aff.Ex. 5.) On September 3, 1997, WSI posted a second job opening for a position with the shuttle wagon crew. WSI hired white males for both openings on the shuttle wagon crew.

Plaintiff alleges that Defendant wrongfully hired white males to positions for which Plaintiff was qualified and in which Plaintiff expressed an interest. Plaintiff,

---

**3.** Plaintiff expressly states that his claim on this issue is not one of a discriminatory transfer. (Resp. at 1.) The court notes that the positions for which Plaintiff was denied—to work on the shuttle wagon crew—are of a distinct job classification than those on the wash crew. (*Id.* at 7.) Shuttle wagon crew requires additional training and pays a higher wage than the staging position Plaintiff held. (Combs Aff. ¶ 8.) Because the court finds that the position in which Plaintiff expressed an interest is one which includes elevated compensation and requires additional training, the court finds that the position would be a promotion and not a lateral transfer. Thus, the court analyzes this claim of Plaintiff's under the framework of a failure to promote.

**4.** Warren Casey, a white male, received the position on the shuttle wagon crew which was posted on September 3, 1997. Because the evidence shows that Casey worked at WSI for less time than Plaintiff before receiving the promotion to shuttle wagon crew, the court finds, for purposes of Defendant's Motion, that Casey was less qualified than Plaintiff for the position on the shuttle wagon crew. (Def.'s Mem. at 7.)

however, did not apply for either job opening. (Harris Dep. at 14.) Rather, he only expressed an interest in the positions to his supervisor. (Washington Dep. at 18.) The court cannot find, and Plaintiff offers no support for the proposition that a claimant need only "express an interest" in a position in order to raise a failure to promote claim. To the contrary, Title VII clearly requires that a claimant apply for the position for which he was denied. *See Evans v. McClain of Georgia, Inc.*, 131 F.3d 957, 963 (11th Cir.1997); *Wu*, 847 F.2d at 1483.

However, if the hiring process is secretive or informal, a plaintiff may be excused from the requirement of showing he formally applied for a position. *See Carmichael v. Birmingham Saw Works*, 738 F.2d 1126, 1132–1133 (11th Cir.1984) (holding that where employer had no formal procedures regarding promotions, Title VII claimant is not required to apply for position to bring failure to promote claim). That is not the case here, though. The undisputed evidence shows that Defendant has a clear procedure for meeting employment needs. Defendant posts job openings internally, in an attempt to hire from within the company. (Harris Dep. at 13.; Combs Aff. ¶ 12.) On August 14, 1997, and September 3, 1997, Defendant posted job openings for the shuttle wagon crew according to its policy on job postings. (Combs Aff.Ex. 5, 6.) Defendant received a total of three applications for the two positions; none were from Plaintiff. (Harris Dep. at 14; Def.'s Mem. at 7.)

Accordingly, the court finds that Plaintiff did not apply for the promotion he was denied. Moreover, the court finds that Plaintiff was not excused from applying for the job openings because they were posted in an open manner, according to a well-articulated company policy. Thus, the court finds that Plaintiff fails to meet the second prima facie element of a failure to promote claim. Because Plaintiff fails to make out a prima facie case, his claim of disparate treatment based on a failure to promote cannot survive summary judgment.

**B. Claims Of Disparate Treatment In Training Opportunities and Denial Of Leave Time and Claim Of Hostile Work Environment**

Plaintiff's second and third claims of disparate treatment allege that Defendant denied him the "opportunity to train for positions traditionally reserved for whites," and denied him leave time otherwise given to white employees. (Compl.¶ 8.) Plaintiff also alleges that pervasive racial intimidation, ridicule, and insult constitute a hostile working environment. (Compl.¶¶ 19, 24.) However, Plaintiff has not argued the merits of these claims in any of his pleadings submitted to the court. (Resp. at 1–3.) In fact, in his Response To WSI's Motion For Summary Judgment, Plaintiff only presents arguments on his disparate treatment and retaliatory termination claims. (Resp. at 1–2.) The court finds no mention of Plaintiff's training opportunities, leave time, or hostile work environment claims in Plaintiff's subsequent pleadings, despite the fact that WSI presents arguments that these three claims must fail as a matter of law. (Def.'s Mem. at 8–10.)

Furthermore, Plaintiff has not contested WSI's latest assertion that Plaintiff "apparently concedes" his training opportunities, leave time, and hostile work environment claims. (Reply at 1.) Additionally, the uncontested evidence shows that all employees are eligible to train for positions on the shuttle wagon crew. (Combs Aff. ¶¶ 8–10.) Moreover, the undisputed evidence is that Plaintiff's request for leave time was denied in accordance with a company policy that no leave requests would be granted between December 22, 1997, to December 31, 1997. (Mot.Ex. I; Harris Dep. at 34, 37.) Plaintiff offers no evidence that any other employee had a request for leave time granted for any of the restricted dates. Lastly, Plaintiff apparently concedes that his hostile work environment claims are not supported by the facts when he states that, "[n]o one never harassed me." (Harris Dep. at 33.)

In other words, Plaintiff has rested ·on his pleadings and apparently expects the court to formulate an argument that will allow his training opportunities claim to survive summary judgment. However, "[t]here is no burden upon the district court to distill every potential argument that could be made based upon the materials before it on summary judgment. Rather, the onus is upon the parties to formulate arguments; grounds alleged in the complaint but not relied upon in summary judgment are deemed abandoned." *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995). Therefore, based on the foregoing, the court finds that Plaintiff has abandoned his training opportunities, leave time, and hostile work environment claims; thus, summary judgment is due to be granted as to these claims.

### C. Claim Of Retaliatory Discharge

Plaintiff argues that Defendant retaliated against him by "terminating his employment" because Plaintiff filed a complaint with the EEOC. (Compl.¶ 28.) The court construes Plaintiff's argument as claim of retaliatory discharge. To establish a prima facie case of retaliatory discharge, Plaintiff must show: (1) that he engaged in statutorily protected expression; (2) that he suffered an adverse employment action; and (3) that there is some causal relation between the two events. *See Taylor v. Runyon*, 175 F.3d 861, 868 (11th Cir.1999). Defendant does not dispute that Plaintiff meets the first and second prongs of a retaliatory discharge claim. (Def.'s Mem. at 19–20.) Accordingly, the court finds that Plaintiff has satisfied the first and second prima facie elements of his retaliation claim.

The court also finds that Plaintiff has established the third prima facie element by showing a causal connection between his EEOC complaint and his termination that occurred approximately one month later. "[I]n order to establish the requisite 'causal link' required as part of a prima facie case, a plaintiff need only establish that 'the protected activity and the adverse action were not wholly unrelated.' At a minimum, a plaintiff must generally establish that the employer was actually aware of the protected expression at the time it took adverse employment action." *Eldridge*, 970 F.Supp. at 939 (quoting *Goldsmith v. City of Atmore*, 996 F.2d 1155 (11th Cir.1993)). Furthermore, "[t]he causal link requirement has been interpreted broadly" and the standard for establishing causation is "slight." *Merriweather v. Alabama Department of Public Safety*, 17 F.Supp.2d 1260, 1273, 1277 (M.D.Ala.1998) (citing *Meeks v. Computer Assoc. Int'l*, 15 F.3d 1013, 1021 (11th Cir. 1994)).

Here, Plaintiff filed a charge of discrimination with the EEOC on December 9, 1997. (Def.'s Mem. at 11.) "Defendant became aware of this charge on or before December 15, 1997." (*Id.*) Approximately one month later, on January 14, 1998, Defendant terminated Plaintiff's employment. (*Id.* at 12–13.) Based on the foregoing, the court finds that the close proximity in time between Plaintiff's EEOC complaint and his termination is sufficient to establish a causal connection between the protected activity and his termination. *See Donnellon v. Fruehauf*, 794 F.2d 598, 600–601 (11th Cir.1986) (holding that the plaintiff had established the "causal link" prong of the prima facie case, where her discharge occurred one month after filing a charge with the EEOC: "The short period of time ... between the filing of the discrimination complaint and the plaintiff's discharge belies any assertion by the defendant that the plaintiff failed to prove causation."). Therefore, the court concludes that Plaintiff has sufficiently established the third element of his prima facie case of retaliation.

Once a Title VII plaintiff establishes a prima facie case, "an inference arises that the challenged action was motivated by a discriminatory intent." *Schoenfeld v. Babbitt*, 168 F.3d 1257, 1267 (11th Cir.1999) (citing *Burdine*, 450 U.S. at 254, 101 S.Ct. 1089; *Jones v. Gerwens*, 874 F.2d 1534,

1538 (11th Cir.1989)). "The burden then shifts to the employer to 'articulate' a legitimate, non-discriminatory reason for its action." *Id.* (quoting *Burdine,* 450 U.S. at 254, 101 S.Ct. 1089). The employer's burden at this point is one of production and not persuasion. *See Burdine,* 450 U.S. at 254, 101 S.Ct. 1089. Moreover, the Eleventh Circuit has stated that this burden is an "exceedingly light" burden. *Perryman v. Johnson Prods. Co.,* 698 F.2d 1138, 1142 (11th Cir.1983). Thus, the court must now determine whether Defendant has produced enough evidence to articulate a legitimate, non-discriminatory reason for terminating Plaintiff's employment.

■ Defendant proffers one [5] primary reason for terminating Plaintiff's employment: Plaintiff violated WSI's policy regarding absences from work. (Def.'s Mem. at 20.) In support of this reason for Plaintiff's termination, Defendant produces the following evidence: (1) Plaintiff missed three days of work during WSI's critical year end period (*id.*); (2) one of the days missed by Plaintiff was the day for which his request for leave had been denied (*id.*); (3) Plaintiff also missed at least two days of work after New Year's Day, before returning to work on January 5, 1998 (*id.;* Combs Aff.Ex. 2); and (4) Plaintiff's note from his dentist only excused him from missing work on December 29, 1997. (Def.'s Mem. at 20; Mot.Ex. K.)

■ In sum, Defendant contends that the decision to terminate Plaintiff's employment was "well within [WSI's] own policies." (Def.'s Br. at 11.) After careful consideration of Defendant's proffered evidence set forth above, the court finds that Defendant has satisfied its "exceedingly light" burden of producing evidence of legitimate non-discriminatory reasons for Plaintiff's termination. *Perryman,* 698 F.2d at 1142. Now the court examines whether Plaintiff can persuade "the court that the proffered reason[s] for the employment decision [are] a pretext for intentional discrimination." *Jordan,* 649 F.Supp. at 1054.

Plaintiff's argument of pretext is based on Defendant's apparent departure from its own articulated policies regarding unexcused absences. (Resp. at 2.) WSI's policy on unexcused absences states that "[a]bsences totaling ten (10) working days ... shall subject an employee to a written warning." (Combs Aff.Ex. 22.) The court agrees with Plaintiff that this departure from Defendant's own policy on absences creates a doubt as to the sincerity in terminating Plaintiff. Based on the foregoing, the court finds that Defendant's attempts to mitigate the inference of discrimination could be viewed by a jury as rather suspect and give rise to an issue of fact regarding pretext.

Furthermore, the close temporal proximity between the date when Defendant received notice of Plaintiff's EEOC complaint about the alleged disparate treatment—December 15, 1997—and the date when WSI fired Plaintiff—January 14, 1998—leads the court to conclude that another genuine issue of material fact exists regarding pretext. In support of this conclusion, the court notes a factually similar case in which a Title VII plaintiff was fired approximately one month after she had complained of sexual harassment. *Swanson v. Civil Air Patrol,* 37 F.Supp.2d 1312

---

5. Defendant does articulate a second legitimate, non-discriminatory reason for discharging Plaintiff. Defendant asserts that the overwhelming evidence which will be produced at trial will show that Plaintiff made threats of violence against WSI employees during a meeting with his supervisors. (Reply at 2–3.) These threats, Defendant argues, gave WSI cause to fire Plaintiff. (*Id.*) As Defendant concedes, however, the facts are in dispute surrounding the alleged threats. (*Id.* at 3.) While Defendant notes that a court may grant summary judgment if the facts are so compelling that a court would have to direct a verdict at trial, Defendant has not presented the evidence of the "multiple witnesses" who can allegedly testify to Plaintiff's threats. (*Id.*) Therefore, the court declines to accept Defendant's offer to grant summary judgment because of the allegedly "strong" evidence of Plaintiff's threats. (*Id.*)

**1250**

(M.D.Ala.1998). The *Swanson* court found that:

> the timing, coupled with the fact that [plaintiff's] protected activity was an internal grievance complaining of unlawful harassment, against her, by the very person who fired her, was enough to show a material question of fact as to whether [the defendant's] proffered non-discriminatory reason was pretext for retaliation.

*Id.* at 1336. Based on the foregoing, the court finds that the undisputed facts that Plaintiff was terminated just one month after he complained to the EEOC and that Defendant departed from its own stated policy on unexcused absences creates genuine issues of material fact as to whether the non-discriminatory justifications for Plaintiff's termination proffered by Defendant are merely a pretext for unlawful discrimination. Accordingly, summary judgment is due to be denied as to Plaintiff's retaliation claim.

### V. ORDER

Based on the foregoing, it is CONSIDERED and ORDERED that Defendant WSI's Motion For Summary Judgment be and the same is hereby GRANTED IN PART and DENIED IN PART as follows:

1. The motion is GRANTED as to Plaintiff's claim of disparate treatment regarding a failure to promote.

2. The motion is GRANTED as to Plaintiff's claim of disparate treatment regarding training opportunities.

3. The motion is GRANTED as to Plaintiff's claim of disparate treatment regarding denial of leave time.

4. The motion is GRANTED as to Plaintiff's claim of hostile work environment.

5. The motion is DENIED as to Plaintiff's claim of retaliatory discharge.