Cornelius COOPER, Michael Edwards, Charcella Green, Patricia Harris, Sarah Jean Harris, Irene McCullers, and Carolyn Wilson, Plaintiffs,

v.

SOUTHERN COMPANY, Georgia Power Company, Southern Company Services, Inc., and Southern Company Energy Solutions, Inc., Defendants.

Civil Action No. 1:00–CV–2231–ODE.

United States District Court,
N.D. Georgia,
Atlanta Division.

March 31, 2003.

R. Lawrence Ashe, Jr., Nancy E. Rafuse, Susan Elisabeth Himmer, Paul Hastings Janofsky & Walker, Atlanta, GA, for Movant.

Michael B. Terry, Joshua F. Thorpe, Steven Rosenwasser, Bondurant, Mixson & Elmore, Atlanta, GA, J. Keith Givens, Angela Joy Mason, Cochran, Cherry, Givens, Smith & Sistrunk, Dothan, AL, Hezekiah Sistrunk, Jr., Cochran, Cherry, Givens, Smith & Sistrunk, Atlanta, GA, Jock Michael Smith, phv, Cochran, Cherry, Givens & Smith, Tuskegee, AL, Johnnie L. Cochran, Jr., phv, Cochran, Cherry, Givens & Smith, Los Angeles, CA, Johnnie L. Cochran, Jr., phv, The Cochran Firm, Schnieder, Kleinick, Weitz, Damashek, et al, New York City, for Plaintiffs.

W. Ray Persons, King & Spalding, Richard Gerakitis, Stephen William Riddell, Charles A. Hawkins, Frederick Cobb Dawkins, Ashley Zeiler Hager, Sheldon W. Snipe, Troutman Sanders, Eric Jon Taylor, Walter Christopher Arbery, Kelly D. Ludwick, Hunton & Williams, Atlanta, GA, for Defendants.

### *ORDER*

ORINDA D. EVANS, Chief Judge.

This civil matter alleging employment discrimination in violation of Title VII of

the Civil Rights Act of 1964, as amended, 42 U.S.C. §§ 2000e, et seq., and 42 U.S.C. § 1981 is presently before the court on all Defendants' motion for summary judgment on the individual claims of Plaintiff Sarah Jean Harris. For the reasons set forth below, Defendants' motion is GRANTED.

## I. *Facts*

██ The following facts are undisputed unless noted otherwise. Plaintiff began working at Georgia Power Company ["GPC"] in 1979 as a General Clerk.[1] By 1989, she had progressed to Operating Assistant. In 1994, Plaintiff was reassigned to the Duluth office as a Secretary. Plaintiff's job title was changed to Region Support Representative in 1997.

*Performance Evaluations*

Hugh Walters, Power Delivery Manager for the GPC's Gwinnett Region, evaluated

Plaintiff's job performance for 1997 and noted that she needed "to improve in the following areas: teamwork, cooperation, personal use of telephones, and getting to work on time." Walters Dec. ¶ 5. Furthermore, Plaintiff did not "show adequate objectivity or openness to the views of others" and made "minimal" contributions to building team spirit. *Id.* Plaintiff sometimes "exhibited a lack of tact or consideration for others and she would be easier to work with if she projected a more positive outlook and pleasant manner." *Id.*

In his evaluation of her job performance for 1998, Thomas B. Davis, Plaintiff's supervisor, noted that she continued to make excessive use of the telephone for personal calls and was habitually tardy and remained unwilling or unable to cooperate with her co-workers. Davis Dec. ¶ 9. In April, May and June of 1999, Davis and Walters coached Plaintiff regarding her

---

**1.** Defendants The Southern Company ["TSC"], Southern Company Energy Solutions, Inc. ["SCES"], and Southern Company Services ["SCS"] move for summary judgment on the grounds that Plaintiff has never been employed by nor did she ever apply for positions at TSC, SCES, or SCS. Plaintiff has failed to respond to SCES's motion and is deemed to have abandoned his claim against SCES. *Resolution Trust Corp. v. Dunmar Corp.*, 43 F.3d 587, 599 (11th Cir.1995); *Hudson v. Norfolk Southern Ry. Co.*, 209 F.Supp.2d 1301, 1329 (N.D.Ga.2001).

A plaintiff must be an "employee" to bring a Title VII lawsuit. *Llampallas v. Mini–Circuits, Inc.*, 163 F.3d 1236, 1242 (11th Cir. 1998). An "employee" for Title VII purposes is an "individual[] who receive[s] compensation from an employer." *Id.* at 1243. An "employer" is a "person engaged in an industry affecting commerce who has fifteen or more employees." 42 U.S.C. § 2000e(b). The analysis of whether a party is an employer appears to be the same under Title VII and § 1981. *See Standard v. A.B.E.L. Services, Inc.*, 161 F.3d 1318, 1330 (11th Cir.1998) (noting that these statutes have the same requirements of proof and use the same analytical framework); *Richard v. Bell Atlantic*

*Corp.*, 946 F.Supp. 54, 61 n. 2 (D.D.C.1996); *Sargent v. McGrath*, 685 F.Supp. 1087, 1089 (E.D.Wis.1988); *Alie v. NYNEX Corp.*, 158 F.R.D. 239, 245 n. 3 (E.D.N.Y.1994). Thus, Plaintiff has standing to sue TSC only if it can be shown that TSC constituted an "employer" from whom Plaintiff received compensation.

It is undisputed that TSC is a holding company which owns the stock of all other Defendants named in the complaint but has no employees. Womack Aff. ¶ 9. Plaintiff asserts that Defendants, including TSC, created SCS as a company-wide human resources department and use SCS's "extensive involvement in personnel policy-making and employee selection processes" to maintain "substantial involvement in GPC's personnel decisions." Plaintiff fails to point to any facts in the record to support these allegations; however, even if this were true, it is irrelevant with respect to Plaintiff's claims. Plaintiff has failed to provide evidence that any SCS employees were involved in any allegedly discriminatory acts. *See Wood v. Southern Bell Telephone and Telegraph Co.*, 725 F.Supp. 1244, 1249–50 (N.D.Ga.1989). Accordingly, Defendants' motion for summary judgment is GRANTED with respect to TSC, SCES and SCS.

unsatisfactory performance. In her mid-year 1999 evaluation, Plaintiff was rated either "Unsatisfactory" or "Needs Improvement" in every performance category listed on the evaluation sheet. Davis Dec. ¶ 6. Among other things, the evaluation noted that Plaintiff worked overtime to complete tasks that should have been completed in half a day, made mistakes matching service orders with wiring approvals, remained unsuccessful working in group situations, remained unable to return from lunch on time, and continued to spend too much time on personal telephone calls.

Shortly after her 1999 mid-year review, Walters placed Plaintiff on GPC's Positive Discipline program. The Positive Discipline Program is used when an employee does not respond to informal mechanisms to correct poor work performance. In level one, the Oral Reminder, the employee's immediate supervisor reminds the employee of the supervisor's performance expectations and describes how the employee is not meeting those expectations. If the Oral Reminder does not correct the problem, a Written Reminder is administered. The Written Reminder is the second level of Positive Discipline and documents a discussion about unacceptable behavior or performance, the supervisor's expectations, and what the employee intends to do to correct the problem. If, within twelve months from the date of the Written Reminder, the employee does not correct the problems, the final level of Positive Discipline, Decision–Making Leave ["DML"], is triggered. The DML includes a discussion during which the extreme seriousness of the employee's problem is made clear, and the requirement for a total performance commitment is communicated. The employee is given a workday off with pay to decide either to resolve the problem or resign from GPC. If the employee elects the former option, specific notice is given that if any performance problem that requires disciplinary action occurs in the eighteen months following the DML, the employee is likely to be terminated. An employee who fails to make adequate improvement while on DML, or who commits another work infraction which might otherwise call for discipline during the eighteen months while a DML is active, is discharged.

On October 7, 1999, Plaintiff was placed on DML status and she was given a day off to consider whether she wanted to remain employed by GPC. Upon return from DML, Plaintiff made a total performance commitment to her assigned duties and agreed to work toward solving her work performance and conduct problems. Plaintiff was the only Customer Service Employee in the entire Gwinnett Region who was on DML status.

Defendants allege that although Plaintiff showed some improvement in her February 2000 evaluation, which covered her performance in the second half of 1999, "the problems still existed that were documented and talked about in the reviews." Davis Dec. ¶ 8; Davis Dep. at 57. Defendants also contend that Plaintiff's performance remained below that of other employees in her department. Davis Dec. ¶ 8. Plaintiff challenges this description of her performance, pointing to Davis's testimony that he did not have any problems with Plaintiff's performance beginning one month after she was placed on DML status. Davis Dep. 52–53. Plaintiff also challenges Defendants' assertion that her performance remained below that of other employees, pointing to evidence that a white employee performing the same or similar tasks was rated at the same level as Plaintiff. Plaintiff Aff., Ex. J.

Defendants also contend that Plaintiff's evaluations from January 1998 through July of 2000 were not as good as those of Plaintiff's white co-workers. Plaintiff challenges this assertion, arguing that the

scores in her mid-year 2000 evaluation were equal to those of her white co-workers, and that her evaluation score for 1999 was the same as one of her white co-workers. Plaintiff Aff., Ex. J.

*Promotions*

In 1999, Plaintiff approached Charles Mitchell about filling an open Region Support Representative position. According to Plaintiff, Mitchell told her that the position was being held for Denise Hewes, a white employee. Plaintiff alleges that she then told Mitchell that she "wouldn't interview for it." Plaintiff Dep. 126. Defendants contend that Mitchell informed Plaintiff that the opening was for an entry-level position which would have been a demotion for Plaintiff. Mitchell Dec. ¶ 3. Neither Plaintiff nor Hewes applied for the position, which was awarded to a third person. *Id.*

In January of 1999, Kay Barron was awarded a Drafter's position as a result of a developmental move. Developmental moves are, in accordance with GPC policy, exempted from the Company's standard posting process. According to Defendants, Hugh Walters, Alan Golden, and Charles Mitchell identified Barron for a developmental move into this position because of her excellent performance the preceding three years as a Region Support Representative. Barron had previously expressed interest in becoming a Drafter and had in fact passed the drafting exam on April 28, 1998. Plaintiff had never expressed any interest in becoming a Drafter and never attempted the drafting exam.

On June 23, 1999, a second Drafter position was posted in the Duluth Operating Center. The position would require the successful candidate to provide scaled and detailed engineering related drawings to support company construction, maintenance and operations activities, and to provide plans and sketches, resolve design problems, prepare estimates, and make scale calculations. Plaintiff did not apply for the position. The position was awarded to John Tillman, an employee who was already a Drafter A with six years' experience in the engineering department. Plaintiff had no engineering experience, had not taken the required Technical Occupations Draft test, and therefore, lacked essential experience required for the position.

*Compensation*

According to Defendants, GPC's annual merit pay increases and bonuses are performance-based. In 1998 and 1999, David Seago made the final decisions on what performance-based compensation increases would be given to Plaintiff and her white co-workers Diane Wylie and Lynn Collett. Defendants assert that the race of each woman played no role whatsoever in any decision he made regarding performance-based compensation increases. According to Defendants, Seago made these decisions based on each woman's job performance, as memorialized in the performance evaluations prepared by Thomas B. Davis, their direct supervisor. Defendants contend that throughout 1998, 1999 and 2000, neither Wylie nor Collett was on any form of corrective discipline. Plaintiff argues that Wylie and Collett's evaluations state that they took long lunches, were late to work, and made personal phone calls. Harris Aff., Ex. L.

Due to a company reorganization in the Fall of 2000, the Distribution Employees—Plaintiff, Collett, and Wylie—began reporting to Jim Sykes. Thus, Jim Sykes and David Seago jointly made the final decisions on what performance-based compensation increases would be given Diane Wylie and Lynn Collett in 2000. Plaintiff did not receive a performance-based increase in 2000 because she was terminated prior to her year-end review.

*Retaliation*

On July 27, 2000, Plaintiff and her co-plaintiffs filed the instant lawsuit. Plaintiff alleged that she "received lower performance evaluation scores than her Caucasian counterparts who perform in an equal or less proficient manner." Third Amended Complaint at 35. Plaintiff also alleged that she was "denied job opportunities on the basis of her race." *Id.* at 36.

Shortly after filing her lawsuit, Plaintiff requested a mid-year performance evaluation. Defendants provided Plaintiff with an evaluation expressing general satisfaction with Plaintiff's performance. Defendants contend that shortly after completing this evaluation, they began receiving complaints about Plaintiff's job performance, including customer complaints about delays in service connections, co-worker complaints that service orders prepared by Plaintiff for engineers were filled with mistakes, and complaints that Plaintiff's personal telephone usage had dramatically increased and was preventing her from completing her work. Defendants further claim that the work Plaintiff did complete was riddled with significant errors, leading to numerous customer complaints.

Defendants further claim that around August 22, 2000, Walters was informed that Plaintiff had falsified a document to make it appear that on August 16, 2000, she had given a GPC engineer information about an address that needed to be visited to determine what service was necessary. Walters Dep. 58–60. Specifically, Defendants contend that an engineer, Keith Thomas, went to his supervisor, Steve Lewis, and reported that he had received a work order on August 22, 2000, which Thomas believed had originally been received by Plaintiff on August 16, 2000. *Id.* at 87, 90–91. Walters concluded that Plaintiff in fact gave the engineer the document on August 22, 2000, and falsified company records to make it appear that the engineer had failed to visit the address in a timely manner. *Id.* at 91.

According to Defendants, on August 24, 2000, Walters and Davis met with Seago to discuss the drastic decline in Plaintiff's performance. Defendants contend that after considering her DML status, her falsification of records, and the dramatic decline in her performance since her mid-year review, Seago and Walters decided to terminate Plaintiff.

*Plaintiff's Claims*

In Plaintiff's Amended Responses to GPC's First Interrogatories, she identified twenty-nine individuals who she contends received higher compensation for work that is the same or similar to work she performed.[2] In 1998, 1999, and 2000, David Seago did not make the final decisions on what performance-based compensation increases would be given to any of these employees except for Sheila Green. During this time period, none of these employees worked in the Gwinnett Region under his supervision or under the supervision of either Hugh Walters or Britt Davis. In 1998, 1999, and 2000, all of these employees except for Sheila Green worked in different regions and under different supervisors than Plaintiff. Defendants allege that some of these employees had different job titles and vastly different job duties from Plaintiff. None had ever

---

**2.** They are Priscilla Johnson, Teresa Thompson, Bantes Hodges, Diane Seagraves, Rebecca Sellers, Belinda Seamen, Carolyn Helms, Patricia Ann Reuter, Christine Morris, Regina Sinclar, Ann Rogers, Diane Cooper, Deborah Lee, Phyllis Austin, Rebeca Stevens, Tara Prince, Carolyn Simmons, Cathy McDaniel, Sallyann Mount, Jewel Lewis, Shirley Stefanini, Susan Hinnant, Barbara Mansell, Neita Cox, Suzanne Corley, Sabra Zautke, Nancy Crisp, Carlita Stewart, and Sheila Green.

been placed on DML status. In September of 2000, Plaintiff amended her complaint to allege that she was terminated in retaliation for filing the instant suit and because of her race.

## II. Defendants' Summary Judgment Motion

Summary judgment is appropriate only "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the [Defendant] is entitled to a judgment as a matter of law." Fed. R.Civ.P. 56(c). To prevail in their motion for summary judgment, Defendants must show that the evidence is insufficient to establish an essential element of Plaintiff's case. *Celotex Corp. v. Catrett,* 477 U.S. 317, 325, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). In ruling on Defendants' motion, the court must view the evidence in a light most favorable to Plaintiff. *Adickes v. S.H. Kress & Co.,* 398 U.S. 144, 157, 90 S.Ct. 1598, 26 L.Ed.2d 142 (1970). If Defendants make a sufficient showing, then Plaintiff "must come forward with 'specific facts showing that there is a genuine issue for trial.' " *Matsushita Electric Industrial Co. v. Zenith Radio Corp.,* 475 U.S. 574, 587, 106 S.Ct. 1348, 89 L.Ed.2d 538 (1986) (quoting Fed.R.Civ.P. 56(e)).

 Under Title VII, an employer may be found liable for unlawful discrimination under any one of three discrete theories: disparate treatment, pattern and practice, or disparate impact. *EEOC v. Joe's Stone Crab,* 220 F.3d 1263, 1273 (11th Cir.2000).[3] The first two theories require proof of discriminatory intent, while the third does not. *Id.* at 1273. Defendants argue that summary judgment is appropriate here because Plaintiff has failed to establish a claim of intentional discrimination or disparate impact. Plaintiff objects, arguing that there are genuine issues of material fact precluding summary judgment as to both Plaintiff's intentional discrimination and disparate impact claims. Because the theories place different burdens on Plaintiff, the Court will address them separately.

### A. Intentional Discrimination

 To establish a prima facie case of race discrimination under a disparate treatment theory, Plaintiff may offer either direct or circumstantial evidence of discriminatory intent. *See McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 802–03, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973); *Alexander v. Fulton County, Ga.,* 207 F.3d 1303 (11th Cir.2000). If the plaintiff presents direct evidence of discrimination, the defendant is then required to prove by a preponderance of the evidence that it would have taken the adverse employment action even in the absence of discrimination.

 To make a prima facie case using circumstantial evidence, a plaintiff may use the test recognized in *McDonnell Douglas.*[4] Under this test, a plaintiff may establish a prima facie case by demonstrating 1) that he belongs to a protected class under Title VII; 2) that he was qualified for and applied for the job; 3) that he was rejected; and 4) that others who were not members of the protected class were promoted. *Denney v. City of Albany,* 247

---

**3.** Section 1981 provides a cause of action only for claims of intentional discrimination. *See Washington v. Davis,* 426 U.S. 229, 239, 96 S.Ct. 2040, 48 L.Ed.2d 597 (1976); *Ferrill v. Parker Group, Inc.,* 168 F.3d 468, 472 (11th Cir.1999).

**4.** The *McDonnell Douglas* standard for a prima facie case is applicable in employment discrimination suits brought under 42 U.S.C. § 1981. *Sledge v. Goodyear Dunlop Tires North America, Ltd.,* 275 F.3d 1014 (11th Cir. 2001).

F.3d 1172, 1183 (11th Cir.2001); *Combs v. Plantation Patterns,* 106 F.3d 1519, 1543 (11th Cir.1997). If the plaintiff provides sufficient circumstantial evidence to support a prima facie case, a legal presumption of unlawful discrimination arises and the burden of production shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the challenged employment action. *McDonnell Douglas,* 411 U.S. at 802–03, 93 S.Ct. 1817. The defendant's burden is "exceedingly light" and is "one of production, not proof." *Id.* at 802, 93 S.Ct. 1817. If the defendant satisfies its burden, the presumption of discrimination is eliminated and the plaintiff must be given an opportunity to prove by a preponderance of the evidence that the legitimate reason offered by the defendant is a pretext for discrimination. *Id.*

▓▓▓▓▓ A plaintiff may also use statistical evidence to establish a prima facie case of discrimination or pretext. *Brown v. American Honda Motor Co., Inc.,* 939 F.2d 946, 952 (11th Cir.1991). Statistics may be used to establish an individual plaintiff's claim that a pattern or practice of discrimination existed, or simply to bolster the plaintiff's other circumstantial evidence of individual disparate treatment. Under the pattern and practice theory, the plaintiff must provide evidence sufficient to establish that impermissible discrimination was the employer's "standard operating procedure." *Joe's Stone Crab,* 220 F.3d at 1274–75, 1286–87 (internal quotation marks and citation omitted). Even if the statistical evidence is insufficient to meet this standard, evidence establishing a discriminatory pattern "is probative of motive and can therefore create an inference of discriminatory intent with respect to the individual employment decision at issue." *Parker v. Burnley,* 693 F.Supp. 1138, 1153 (N.D.Ga.1988) (internal quotation marks and citation omitted). Whether the plaintiff argues that the statistical evidence supports a pattern or practice claim or simply constitutes evidence of disparate treatment, "[t]he ultimate inquiry remains whether the plaintiff has demonstrated that the defendant *intentionally* discriminated in refusing to enter into a contractual relationship." *Brown,* 939 F.2d at 952 (citing *Grigsby v. Reynolds Metals Co.,* 821 F.2d 590, 595 (11th Cir.1987)).

In their motion, Defendants assert that Plaintiff has failed to establish a discrimination claim under any of the available theories. In response, Plaintiff points to facts in the record which she contends raise genuine issues of material fact precluding summary judgment as to her claims of retaliation, compensation discrimination, pattern and practice discrimination, and disparate impact. It is therefore necessary to determine whether Plaintiff has provided sufficient evidence to raise a genuine issue of material fact to preclude summary judgment as to these claims.

### Failure to Promote

Plaintiff alleges in the complaint that Defendants improperly denied her promotions based on her race. Complaint ¶ 99. Specifically, Plaintiff claims that Defendants discriminated against her when they did not hire her to fill the Senior Region Support Representative position in October of 1999. Defendants argue that summary judgment is appropriate because Plaintiff never applied for this position or for any other position during her employment by Defendants.

▓▓▓ Generally, a plaintiff's failure to apply for the position in question precludes a claim of discrimination in promotion. *Evans v. McClain of Georgia, Inc.,* 131 F.3d 957, 963 (11th Cir.1997); *Harris v. Warehouse Services, Inc.,* 77 F.Supp.2d 1240, 1246 (M.D.Ala.1999). However, a plaintiff is not required to show that she applied for a position if she shows that the employer maintained an informal pro-

motion process under which job opportunities were not regularly posted. *Carmichael v. Birmingham Saw Works,* 738 F.2d 1126 (11th Cir.1984); *Harris v. Birmingham Board of Education,* 712 F.2d 1377 (11th Cir.1983). Plaintiff does not dispute that she did not apply for this or any other position during her employment and has not pointed to any evidence that Defendants maintained an informal promotion process under which job opportunities were not regularly posted. Because Plaintiff has failed to establish a prima facie case, her claim for promotion discrimination must fail. *Chapman v. AI Transport,* 229 F.3d 1012, 1024 (11th Cir.2000). Accordingly, Defendants motion for summary judgment on Plaintiff's failure to promote claim is GRANTED.

## Compensation Discrimination

■ To make out a prima facie case of compensation discrimination, Plaintiff must establish the following four elements: 1) that she is a member of a protected class; 2) that she received low wages; 3) that similarly situated persons outside the protected class received higher wages; and 4) that she was qualified to receive the higher wages. *MacPherson v. University of Montevallo,* 922 F.2d 766, 774 (11th Cir.1991) (applying the test in an age discrimination case). Defendants argue that summary judgment is appropriate because Plaintiff cannot establish that similarly situated persons outside the protected class were paid more than she was or that she was qualified to receive the higher wages.

■ Defendants first contend that summary judgment is appropriate because Plaintiff has failed to produce evidence of a proper comparator and thus cannot establish that similarly situated persons outside

the protected class received higher wages. "In a comparator analysis, the plaintiff is matched with a person or persons who have very similar job-related characteristics and who are in a similar situation to determine if the plaintiff has been treated differently than others who are similar to him." *Id.* Plaintiff claims that co-workers Wylie, Collett, and Barron were similarly situated white employees who were paid more than she was.

Plaintiff has failed to point to any evidence to support her claim that Kay Barron is a proper comparator.[5] Plaintiff cites to the deposition testimony of her former supervisor, Britt Davis, to support her argument that she, Collett, and Wylie performed the same or similar functions. According to Davis's testimony, Plaintiff, Collett, and Wylie carried out administrative tasks for the cable locator team under Davis's supervision. Davis indicated that Collett was responsible for recording data with respect to the team's completed work orders and for resolving problems with respect to service delivery and that she also served as a back-up for recording the crew's work time. Davis Dep. 25–26. Wylie's main function was to enter crew time and invoice data and to complete several other minor administrative duties. Plaintiff's responsibility was to process service requests from new customers. There is some evidence that Plaintiff, Wylie, and Collett were capable of performing each other's job functions to some degree but did not do so on a regular basis.

Defendants argue that Plaintiff has no proper comparator pointing out that none of the alleged comparators had the same discipline problems as Plaintiff. Specifically, Defendants argue that Plaintiff's

---

**5.** Plaintiff cites to the performance evaluations for herself and Barron as evidence that they performed similar tasks. Although these reports indicate that Plaintiff and Barron held similar job titles, they contain no information as to what their respective specific job functions were.

performance problems prevented her from receiving better evaluations and the higher performance-based compensation received by her co-workers. Plaintiff was the only Customer Service Employee in the entire Gwinnett Region who was on DML status. According to Defendants, throughout 1998, 1999, and 2000, neither Wylie nor Collett was on any form of corrective discipline.

Plaintiff argues that her performance deficiencies cannot justify her lower compensation for two reasons. First, Plaintiff asserts that merit increases and annual incentives were the only aspects of compensation affected by employee performance. Plaintiff contends that her co-workers' merit increases were at most only two percent more than Plaintiff's merit increases and that therefore performance deficiencies do not explain why Wylie earned fourteen percent and Collett nineteen percent more than Plaintiff. Plaintiff cites to supervisor Seago's testimony that merit increases and annual incentives were based on employee performance; however, Seago did not address whether employee performance affected other aspects of compensation. Plaintiff has not pointed to any other evidence to support her claim that only merit increases and annual incentives were performance-based. Thus, Plaintiff has failed to establish that these merit increases were the only aspect of compensation affected by employee performance.

Plaintiff also contends that her poor performance does not justify the compensation disparity because her co-workers were also counseled about performance deficiencies. Specifically, Plaintiff relies on her co-workers' performance evaluations indicating that her co-workers were advised to "keep personal phone calls to a minimum and limit lunch breaks to 60 minutes." Plaintiff Aff., Ex. L. However, as Defendants note, these evaluations were completed in 1998, and there is no evidence that either Wylie or Collett failed to cor-

rect these issues after being counseled about them. Plaintiff also contends that she did not commit "significantly" more errors than white employees performing the same or similar jobs and challenges Defendants' contention that Plaintiff's evaluations from January 1998 through July of 2000 were not as good as those of Plaintiff's white co-workers. To support these claims, Plaintiff notes that the scores in her mid-year 2000 evaluation were equal to those of her white co-workers, and that her evaluation score for 1999 was the same as one of her white co-workers. Plaintiff Aff., Ex. J. That Plaintiff twice received evaluation scores equal to her white co-workers after being counseled about her performance deficiencies and placed on DML status is insufficient to overcome Defendants' evidence that Plaintiff's overall performance during the period in question was not as good as that of her white co-workers. Plaintiff's belief that her performance was equal to that of her co-workers does not support a finding that Plaintiff was actually qualified for the higher pay. *Holifield v. Reno*, 115 F.3d 1555, 1565 (11th Cir.1997).

Such disparity in disciplinary status precludes the use of Collett and Wylie as proper comparators. *See MacPherson*, 922 F.2d at 774–75 (comparing performance evaluation scores to determine whether co-workers are in "similar situation" and thus proper comparators). Plaintiff's inability to controvert Defendants' evidence with respect to her poor performance also weakens her argument that she was qualified for the higher wage. In any event, even if Plaintiff was able to establish a prima facie case, Plaintiff's poor performance also constitutes Defendants' non-discriminatory reason for her lower compensation. As discussed above, Plaintiff has failed to provide sufficient evidence to rebut Defendants' evidence with respect to Plaintiff's poor perfor-

mance nor has Plaintiff provided evidence to establish that Plaintiff's poor performance was not the real reason for her compensation rate.

■ Plaintiff has also provided statistical evidence of racial imbalances in Defendants' compensation practices as evidence of pretext. Specifically, Plaintiff has offered statistical reports to support her claim that Defendants' compensation practices had a discriminatory effect on black employees. Plaintiff argues that the reports of her expert, Dr. Madden, which find statistically significant disparities in the compensation of black employees relative to white employees, are evidence from which a reasonable fact-finder could determine that intentional discrimination occurred. Defendants contend that Plaintiff's generalized statistics are insufficient to support Plaintiff's claims of intentional discrimination.

■ As the Supreme Court has noted, while statistical evidence may allow the District Court to "determine . . . that the (racial) composition of defendant's labor force is itself reflective of restrictive or exclusionary practices . . . . such general determinations, while helpful, may not be in and of themselves controlling as to an individualized hiring decision, particularly in the presence of an otherwise justifiable reason for refusing to hire." *McDonnell Douglas*, 411 U.S. at 805 n. 19, 93 S.Ct. 1817 (internal quotation marks and citation omitted). In this case, Plaintiff's statistical evidence is insufficiently specific to support her individual claims.

Plaintiff's statistics compare the compensation rate of employees within the same pay grade who perform similar job functions; however, these statistics generally fail to compare similarly situated individuals, significantly diminishing the

probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to compensation decisions. Plaintiff does not provide statistics comparing employees with equivalent work experience in specific job categories or job progressions. Plaintiff relies instead on a statistical analysis of a company-wide data pool and makes no attempt to narrow the data pool to the locations or specific position in which she worked. As this Court noted in the order denying class certification, the probative value of Plaintiff's statistical evidence is therefore highly questionable, in significant part due to the treatment of factors such as experience, education and specific promotion processes. *Cooper v. Southern Company*, 205 F.R.D. 596, 613–14 (N.D.Ga.2001).

The analytical deficiencies of Plaintiff's statistics diminish the probative value of this evidence such that it cannot by itself support a claim of disparate treatment. *See Brown v. American Honda Motor Co.*, 939 F.2d 946, 952 (11th Cir.1991) (holding that summary judgment was appropriate where plaintiff's statistical evidence, which lacked specific analytical foundation and thus failed to show that employer maintained discriminatory intent, was insufficient to establish prima facie case or pretext); *Hawkins v. Ceco Corp.*, 883 F.2d 977, 985 (11th Cir.1989) (holding that plaintiff's statistical evidence failed to establish prima facie case or pretext where evidence failed to make specific analytical comparisons); *cf. James v. Stockham Valves & Fittings Co.*, 559 F.2d 310, 330 (5th Cir.1977) [6] (holding that plaintiff's evidence of statistical disparities in hiring, promotion and compensation was sufficient

---

**6.** This Court adopted as binding precedent all Fifth Circuit decisions prior to October 1, 1981. *Bonner v. City of Prichard*, 661 F.2d 1206, 1209 (11th Cir.1981) (en banc).

to support claim of intentional discrimination where the employment decisions were based on *completely* subjective criteria).

Because Plaintiff has failed to provide any evidence of pretext, Defendants are entitled to summary judgment on Plaintiff's compensation claim. Accordingly, Defendants' motion for summary judgment is GRANTED with respect to Plaintiff's compensation claim.

*Retaliation*

■ Plaintiff also contends that her termination in August 2000 following the filing of this lawsuit constituted retaliation prohibited under Title VII. To prevail on her retaliation claim, Plaintiff must show (1) statutorily protected expression, (2) adverse employment action, and (3) a causal link between the protected expression and the adverse action. *Goldsmith v. City of Atmore,* 996 F.2d 1155, 1163 (11th Cir. 1993). Defendants contend that summary judgment is appropriate because Plaintiff has failed to establish a causal link between the lawsuit and her termination.

■ The causal link requirement is interpreted broadly: "a plaintiff merely has to prove that the protected activity and the negative employment action are not completely unrelated." *Meeks v. Computer Associates Intern.,* 15 F.3d 1013, 1021 (11th Cir.1994) (internal quotation marks and citation omitted). To establish a causal link, Plaintiff relies on the short time between the filing of the lawsuit on July 27, 2000, and her termination on September 1, 2000. Such temporal proximity is sufficient to establish a prima facie case. *See Farley v. Nationwide Mut. Ins. Co.,* 197 F.3d 1322, 1337 (11th Cir.1999) (holding that plaintiff established prima facie case of retaliation where evidence indicated that plaintiff was terminated seven weeks after supervisors became aware that plaintiff filed EEOC charge).

■ Once Plaintiff has established prima facie case, Defendants may rebut a presumption of discrimination by offering a non-discriminatory reason for Plaintiff's termination. *Goldsmith,* 996 F.2d at 1163. In this case, Defendants contend that Plaintiff was terminated in August 2000 due to a rapid and severe deterioration in her performance in July and August of that year and to Plaintiff's alleged falsification of company documents. Plaintiff argues that the allegations of a decline in performance are contradicted by statements contained in the positive evaluation she received just one week before Defendants made the decision to terminate her employment. Plaintiff also offers evidence to contradict Defendants' allegations that she falsified documents. Plaintiff argues that this evidence creates genuine issues of fact with respect to the cause of her termination precluding summary judgment.

Defendants contend that the evaluation at issue covered only Plaintiff's performance from January 2000 through June 2000 and thus does not rebut the evidence that Plaintiff's performance declined beginning in July 2000. However, Plaintiff provides evidence that the evaluation applied to Plaintiff's post-June performance as well. The evaluation does refer to events in July. However, this "event" was the publication of a company newsletter noting that Defendants had received a customer letter thanking Plaintiff and others for their service and there is no evidence with respect to when the letter was written.[7] Plaintiff also offers the testimony of Seago and Davis that supervisors may discuss performance issues with employees outside the context of a formal evaluation.

---

7. Defendants contend that the letter was written in May 2000 but offer no evidence to support this assertion.

This evidence is insufficient to create an issue of fact as to whether the evaluation covered Plaintiff's performance after June 2000.

Plaintiff's evidence with respect to whether she falsified a document is only relevant to the extent that it proves Defendants did not reasonably believe that Plaintiff falsified the document. *See E.E.O.C. v. Total System Services, Inc.*, 221 F.3d 1171, 1176 (11th Cir.2000) (citing *Elrod v. Sears, Roebuck & Co.*, 939 F.2d 1466, 1470 (11th Cir.1991) (noting that inquiry is not whether employee was guilty of misconduct but whether employer in good faith believed employee had done wrong and whether this belief was the reason for the termination)). Defendants contend that Plaintiff's supervisor, Hugh Walters, had information which led him to conclude that on August 22, 2000, Plaintiff gave a service order to Keith Thomas, an engineer, but then made an entry into the computer system indicating that she had given it to him on August 16, 2000. According to Defendants, on August 22, 2000, Thomas reported to his supervisor, Steve Lewis, that Plaintiff had given him a work order, printed from the software program which organizes service requests, that day. Walters Dep. 91. Lewis then "went out in the field" to determine what type of service was required. *Id.* After returning to the office that day, Lewis checked the order within the software program and noted that it appeared to have been amended to indicate that the work order had been given to Thomas on August 16, 2000. *Id.* Upon receiving this information, Walters discussed the matter with Lewis before determining that Plaintiff had falsified the document. *Id.* at 90. Walters did not confront Plaintiff with this evidence. *Id.* at 88. However, Defendants contend that Walters was not required to question Plaintiff about the document. Seago Dep. 39–40. While Plaintiff has provided evidence to contradict Defendants' descrip-

tion with respect to whether Davis, Plaintiff's immediate supervisor, participated in the termination decision, there is no evidence to support a finding that Walters did not maintain a good faith belief that Plaintiff falsified the document. Given Plaintiff's disciplinary status at the time, this evidence is insufficient to create a genuine issue of material fact as to pretext. Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's retaliation claim is GRANTED.

*Pattern and Practice*

■ Plaintiff has failed to create a genuine issue of material fact as to whether a pattern or practice of discrimination existed. As discussed above, Plaintiff has provided statistical evidence in an attempt to establish a claim of pattern and practice discrimination. While "statistics as to [Defendants'] employment policy and practice may be helpful to a determination of whether [Defendants'] refusal to [ ]hire [Plaintiff] in this case conformed to a general pattern of discrimination against blacks," *McDonnell Douglas*, 411 U.S. at 805, 93 S.Ct. 1817, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re Employment Discrimination Litig. Against the State of Ala.*, 198 F.3d 1305, 1312 (11th Cir.1999). The analytical deficiencies of Plaintiff's statistical evidence, discussed above, render this evidence insufficient to support a pattern or practice claim.

■ In addition to Plaintiff's expert reports, Plaintiff offers Defendants' internal personnel documents to support his argument that Defendants maintained a pattern or practice of compensation discrimination. While these documents indicate some disparity in compensation between

black and white employees, these documents are not probative as to whether Defendants intentionally discriminated against Plaintiff during the period in question. The documents indicate average salaries of employees divided by racial classification but do not control for factors such as education, experience or skill level and thus cannot prove that Defendants discriminated on the basis of race. Plaintiff has thus failed to come forward with evidence sufficient to prove that intentional discrimination was Defendants' "standard operating procedure." *Joe's Stone Crab*, 220 F.3d at 1274–75 Accordingly, Defendants' motion for summary judgment with respect to Plaintiff's pattern or practice claim is GRANTED.

### B. *Disparate Impact*

■ Finally, Defendants argue that Plaintiff has failed to establish a claim of disparate impact under Title VII. To establish a claim under a theory of disparate impact, Plaintiff must show 1) the existence of a statistically significant disparity among members of different groups affected by employment decisions; 2) the existence of a specific, facially neutral employment practice; and 3) the existence of a causal nexus between the specific, facially neutral employment practice and the statistically significant disparity. 42 U.S.C. § 2000e–2(k); *Joe's Stone Crab*, 220 F.3d at 1274; *In re Alabama*, 198 F.3d at 1311–14. Defendants contend that Plaintiff's statistics, which are not adjusted to account for differences among various positions and the respective skill and education levels required, are insufficient to establish a statistically significant disparity required to state a claim and that even if Plaintiff could establish such disparity, she has failed to show a causal link to a neutral employment practice.

As evidence of a facially neutral policy, Plaintiff points to Defendants' compensation policies, especially Defendants' base salary policy, which Plaintiff contends permits subjective, discretionary and unmonitored decisions. While Plaintiff has failed to identify in her response to Defendants' motion for summary judgment a specific policy which has had an impermissibly discriminatory impact on her, Plaintiff provided evidence in her motion for class certification to support her claim that Defendants allowed the use of subjective criteria by decisionmakers in each of its subsidiaries.

■ However, simply showing that Plaintiff was subject to subjective policies does not establish a prima facie case of disparate impact. Plaintiff must also show the existence of a causal nexus between these specific, facially neutral employment practices and a statistically significant disparity. "'[P]laintiff must offer statistical evidence of a kind and degree sufficient to show that *the practice in question* has *caused* the exclusion of applicants for jobs or promotions because of their membership in a protected group.'" *Joe's Stone Crab*, 220 F.3d at 1275 (quoting *Watson v. Fort Worth Bank & Trust*, 487 U.S. 977, 994–95, 108 S.Ct. 2777, 101 L.Ed.2d 827 (1988)). In this case, Plaintiff has failed to establish that manager discretion in compensation decisions caused a statistically disparity within the promotions for which she applied.

To establish the first element of a disparate impact claim, Plaintiff relies on her expert's report which finds statistically significant disparities in the compensation of black employees relative to white employees. As Defendants note, however, to have probative value, statistical evidence must be tailored to the appropriate types of decisions and specific populations involved. *Wards Cove Packing Co. v. Atonio*, 490 U.S. 642, 651–55, 109 S.Ct. 2115, 104 L.Ed.2d 733 (1989); *In re Alabama*, 198 F.3d at 1312. While Plaintiff's expert

reports an over-all statistical disparity between black and white employees in compensation, Plaintiff's evidence generally fails to compare similarly situated individuals, significantly diminishing the probative value of any disparity. For example, Plaintiff's statistics do not account for differences in the type or level of the employees' applied skills, both of which are highly related to compensation.

Even if these statistics were sufficient to establish a statistically significant disparity, Plaintiff cannot establish the existence of a causal nexus between the disparity and a specific, facially neutral employment practice. As noted above, Plaintiff has failed to indicate a specific facially neutral practice other than the use of manager discretion in compensation decisions. Further, Plaintiff has presented only company-wide statistics and does not tailor the data to control for factors such as skill level and experience. For Plaintiff to establish that the use of a practice as broad and amorphous as manager discretion causes a statistically significant disparity would require Plaintiff to eliminate the effect of variation in these factors, which she has failed to do in the statistics currently before the Court. Therefore, Defendants' motion for summary judgment with respect to Plaintiff's disparate impact claim is GRANTED. *Fitzpatrick v. City of Atlanta*, 2 F.3d 1112, 1118 (11th Cir. 1993) (holding that employer is entitled to summary judgment where plaintiff fails to provide evidence necessary to prove at trial that there is disproportionate impact of employer's policy on black employees).

For the reasons stated above, Defendants' motion for summary judgment [# 198] is GRANTED.