Terence G. WESTRY, Plaintiff,

v.

NORTH CAROLINA A & T STATE UNIVERSITY, Defendant.

No. CIV. 1:01CV01129.

United States District Court,
M.D. North Carolina.

Sept. 25, 2003.

Olubayo O. Agbetunsin, Law Offices of James E. Hairston, Jr., Durham, NC, for Plaintiff.

Kathleen S. Edwards, NC Department Of Justice Education Section, Raleigh, NC, Celia Grasty Lata, NC, Department of Justice, Raleigh, NC, for Defendant.

## MEMORANDUM OPINION

BULLOCK, District Judge.

Terence G. Westry ("Westry") filed this action against North Carolina A & T State University ("NC A & T") alleging employment discrimination based on race and sex in violation of Title VII of the Civil Rights Act of 1964, as amended, 42 U.S.C. § 2000e *et. seq.* ("Title VII"). Pursuant to Federal Rule of Civil Procedure 56, NC A & T has moved for summary judgment. For the following reasons, the court will grant NC A & T's motion for summary judgment.

### FACTS

In August 1994, North Carolina A & T State University hired Westry, an African–American male, as a Computer Laboratory Coordinator in the university's Division of Information Technology and Telecommunications. NC A & T initially employed Westry at an annual salary of $24,799. Four years later, NC A & T reclassified Westry's position as "Computer Consultant I," and increased Westry's salary to $30,903.

From 1999 to 2000, the Director of Client Services, Anwar Karim, hired four Caucasian Computer Consultants I; David Dingess, Charles David Weaver, James Stowe, and Sylvia Walker. Each of these individuals was hired at a starting salary of $35,000. In late 2000, NC A & T hired another Caucasian male. Albert Bard, at a starting salary of $39,000. NC A & T also hired three African–American males during this time: John Evans at a starting salary of $32,000, Andrew Calhoun at a starting salary of $32,225, and Michael Bethea (in February 2002) at a starting salary of $33,498.

To equalize compensation among older and newer employees, Karim offered in-range salary adjustments to workers who earned less than the hiring salary. These employees included three African–Americans classified as Computer Consultants: Bessie Nkonge (Computer Consultant I), Lisa Lewis Warren (Computer Consultant II), and Westry. To obtain more information about the affected employees, Karim asked them to submit updated resumes. Westry had last submitted his resume in 1994. However, Westry "felt that [Karim] didn't need [a resume]" (Westry Dep. at

26), because he had given a resume to management on at least two prior occasions and because Karim had performed an evaluation of Westry in 1999. Consequently, Westry refused to submit his resume.

Warren and Nkonge submitted their resumes. As a result, Nkonge's salary, which was nearly identical to Westry's salary when the new hirings took place ($33,-167), was adjusted to $35,817. Warren's salary was adjusted to $38,108. Westry's salary remained unchanged. Westry has not asked NC A & T for an in-range salary increase since the initial adjustment occurred. (Westry Dep. at 29.)

In the same time period, due to increased demand for Help Desk services, Karim asked the Computer Consultants I if any of them would volunteer to coordinate the Help Desk duties without additional pay. Previously Westry had performed the Help Desk duties but stopped because he believed that Dingess was to assume the responsibility. Dingess ultimately did not manage the Help Desk, and neither Westry nor Dingess volunteered for the duties. As a result, Karim assumed the duties himself. In August or September 2000, Westry learned that NC A & T had named another of the new hires, Charles David Weaver, the permanent Help Desk Manager and had given Weaver a 10% pay increase.

Also in September 2000, NC A & T posted a Computer Consultant III position opening on the university website and on the Human Resources bulletin board. The university distributed this notification to each personnel division. Though the Computer Consultant III opportunity was available to any Computer Consultant I, Dingess, a Caucasian male hired in 1999, ultimately received the job. Dingess was the only applicant for this position. In December 2002, Westry applied for another computer consulting opening. Although

he was selected to interview for this job, he declined the interview opportunity. On December 14, 2000, Westry filed a Charge of Discrimination with the Equal Employment Opportunity Commission ("EEOC"). Westry continues to work as a Computer Consultant for NC A & T. His present salary is $33,792.

## DISCUSSION

### I. Standard of Review

Summary judgment must be granted if there is no genuine issue as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R.Civ.P. 56(c). The moving party bears the burden of persuasion on the relevant issues. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986). The non-moving party may survive a motion for summary judgment by producing "evidence from which a [factfinder] might return a verdict in his favor." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 257, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986). When the motion is supported by affidavits, the non-moving party must set forth specific facts showing that there is a genuine issue for trial. *See* Fed.R.Civ.P. 56(e); *see also Cray Communications, Inc. v. Novatel Computer Sys., Inc.*, 33 F.3d 390, 393–94 (4th Cir.1994) (moving party on summary judgment motion can simply argue the absence of evidence by which the non-movant can prove her case). In considering the evidence, all reasonable inferences are to be drawn in favor of the non-moving party. *Anderson*, 477 U.S. at 255, 106 S.Ct. 2505. However, "[t]he mere existence of a scintilla of evidence in support of the plaintiff's position will be insufficient, there must be evidence on which the [factfinder] could reasonably find for the plaintiff." *Id.* at 252., 106 S.Ct. 2505

## II. *Timing of EEOC Claim*

To maintain a Title VII action, a plaintiff in a deferral state must file an EEOC charge within 300 days of an alleged act of discrimination. *See* 42 U.S.C. § 2000e–5(e)(1); *Delaware State Coll. v. Ricks,* 449 U.S. 250, 258, 101 S.Ct. 498, 66 L.Ed.2d 431 (1980) (noting that the limitations period in a Title VII claim begins to run at the time of the discriminatory acts); *J.D. Hamilton v. 1st Source Bank,* 928 F.2d 86, 88 (4th Cir.1990) (en banc) (stating that the unlawful act marks the date from which the limitations period is counted). NC A & T contends that Westry's present claims are based in part on actions that occurred outside the 300–day limitations period. Westry filed his EEOC charge on December 14, 2000; thus, the events at issue must have occurred after February 2000. Dingess, Weaver, and Stowe, Caucasian employees who received $35,000 starting salaries, were hired from March to August 1999. NC A & T asserts that Westry's failure to file a charge pertaining to these alleged discriminatory acts within 300 days of their occurrence bars his present attempt to litigate them. *See J.D. Hamilton,* 928 F.2d at 89–90 (affirming dismissal of an age-based discrimination claim for failure to file an EEOC charge within the statutory limitations period).

In his reply to Defendant's motion for summary judgment, Westry has neglected to address NC A & T's claim. Thus, by failing to respond, Westry concedes that the 1999 hirings are acts outside of the statutory limitations period. *See, e.g., Reid v. Albemarle Corp.,* No. Civ.A. 96–7564–A–1, 2002 WL 31526451, at *1 (M.D.La. June 26, 2002) (granting summary judgment to defendants on salary discrimination claims because plaintiffs failed to address such claims in their reply

to summary judgment motion); *Toney v. Rosewood Care Ctr., Inc.,* No. 98C693, 2001 WL 1105127, at *5 (N.D.Ill. Sept.20, 2001) (finding that plaintiffs had waived a claim by failing to respond to defendant's refutation of it); *Ostergren v. Vill. of Oak Lawn,* 125 F.Supp.2d 312, 323 (N.D.Ill. 2000) (noting that plaintiffs who fail to address a claim in response to a motion for summary judgment waive the claim).[1] However, even if the court considers evidence concerning the employees hired in 1999, Westry's Title VII claims fail to survive summary judgment.

## III. *Title VII Framework*

Westry contends that he is the victim of discrimination on the basis of race and sex because he receives a lower salary than Caucasian and female Computer Consultants I and has never received a promotion while Caucasian and female employees have advanced. Title VII of the Civil Rights Act of 1964 prohibits an employer from discriminating on the basis of race, color, religion, sex, or national origin. *See* 42 U.S.C. § 2000e–2(a). Specifically, an employer may not discriminate against an individual with respect to his "compensation, terms, conditions, or privileges of employment." *Id.*

Because Westry has produced no direct evidence of discrimination, the court must evaluate his claims under the framework established in *McDonnell Douglas Corp. v. Green,* 411 U.S. 792, 93 S.Ct. 1817, 36 L.Ed.2d 668 (1973). Under the *McDonnell Douglas* scheme, once a plaintiff establishes a *prima facie* case, the burden shifts to the employer to articulate a legitimate nondiscriminatory reason for its actions. *Texas Dep't of Cmty. Affairs v. Burdine,* 450 U.S. 248, 254, 101 S.Ct. 1089,

---

**1.** In addition, by failing to discuss his "denial of secondary employment" claim or address NC A & T's opposition to it, Westry waives

this claim as well. *See Reid v. Albemarle Corp.,* No. Civ.A. 96–7564–A–1, 2002 WL 31526451, at *1 (M.D.La. June 28, 2002).

67 L.Ed.2d 207 (1981). If the employer satisfies its burden of production, the presumption of discrimination raised by the *prima facie* case is rebutted and "drops from the case," *id.* at 255 n. 10, 101 S.Ct. 1089, and the plaintiff bears the ultimate burden of proving he has been the victim of discrimination. In attempting to satisfy this burden, the plaintiff must be afforded the "opportunity to prove ... that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination." *Id.* at 253, 101 S.Ct. 1089.

A. Wage Discrimination Claim

 To set forth a *prima facie* case of wage discrimination, Westry must show that he is a member of a protected class (in this case, male and/or African–American) and that the job he occupies is similar to higher paying jobs occupied by females and/or whites. *See Brinkley–Obu. v. Hughes Training, Inc.,* 36 F.3d 336, 343 (4th Cir.1994). In 2000, Westry earned $33,167 as a Computer Consultant I while newly hired Caucasian Computer Consultants I earned $35,000. NC A & T contends that this wage disparity, which is less than $2000, is not statistically significant. However, viewing the facts in the light most favorable to Westry, the court finds that Westry has established a *prima facie* case of wage discrimination.

To rebut the presumption of discrimination, NC A & T makes several arguments. First, the university claims that the increased wage for new hires was necessitated by heightened demand for computer personnel due to concerns associated with "Y2K." Despite widespread advertising, NC A & T asserts that it could not fill openings for Computer Consultants I without raising the hiring salary to $35,000. NC A & T also defends this wage increase by pointing to the in-range salary adjustments that equalized pay between new hires and older employees who submitted

resumes. Finally, the university argues that Westry qualified for this in-range salary adjustment, and his inability to obtain a salary commensurate with the new hires is due entirely to his failure to submit a resume as requested.

Because NC A & T has articulated legitimate nondiscriminatory reasons for Westry's alleged pay disparity, Westry must introduce evidence to show that these reasons are a pretext for discrimination. *St. Mary's Honor Ctr. v. Hicks,* 509 U.S. 502, 507–08, 113 S.Ct. 2742, 125 L.Ed.2d 407 (1993). "Pretext" in this context means deceit designed to hide unlawful discrimination. *See Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 147, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Kulumani v. Blue Cross Blue Shield Ass'n,* 224 F.3d 681, 684 (7th Cir.2000), *reh'g denied,* 2000 U.S.App. LEXIS 23589 (Sept. 19, 2000). Thus, westry must produce evidence to show that NC A & T's explanation of the salary differential is really a front for discriminatory conduct. *See Young v. General Foods Corp.,* 840 F.2d 825, 829 (11th Cir.1988) (noting that "[b]ecause the plaintiff bears the burden of establishing pretext, he must present 'significantly probative' evidence on the issue to avoid summary judgment" (quoting *Celotex Corp. v. Catrett,* 477 U.S. 317, 322–23, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986))).

 Westry has produced no evidence of a discriminatory motive underlying the university's decision to increase pay for new hires. Westry does point out that three African–American males were hired during the relevant period at salaries $1502–$3000 lower than their Caucasian and female counterparts. However, Westry has produced no evidence showing that race or gender discrimination is the underlying reason for the disparity. Westry has not demonstrated that the qualifications of the new African–American employees were

sufficiently similar to those of the Caucasian employees and has not compared the qualifications of male employees to females. In fact, Westry admits that he does not know the qualifications or experience of any of these employees. (Westry Dep. at 39, 40.) Westry also acknowledges that he does not know the factors NC A & T used to establish the hiring salary for each applicant or the composition of the hiring pool at the time of hiring. (Westry Dep. at 34–35.) *See Cooper v. Southern Co.*, 260 F.Supp.2d 1278, 1291 (N.D.Ga. 2003) (granting summary judgment for defendant when plaintiff offers as evidence of pretext statistical evidence demonstrating a disparity in wages between minority and non-minority employees but fails to compare the level of the employees' skills, work experience, or education); *Porter v. Milliken & Michaels, Inc.*, No. Civ.A. 99–0199, 2001 WL 736753, at *4 (E.D.La. June 27, 2001) (granting summary judgment for defendant on Title VII wage discrimination claim in part because plaintiff asserted he had more experience than his white counterparts without any knowledge of their qualifications).

Despite these evidentiary shortcomings, Westry argues that NC A & T has discriminated against him because he has worked since 1994 and has received only a 36.26% salary increase, whereas the Caucasian employees hired in 1999 have received salary increases ranging from 16–24%. Though Westry's compensation increase may seem smaller in comparison to that of the new hires, his compensation statistics do not indicate that NC A & T has discriminated against him based on race or sex when considered with data about other employees.

For instance, other African–American employees, male and female, have not been victimized by the salary disparity Westry experiences. Instead, the African–American Computer Consultants I who submitted their resumes for the in-range salary adjustment received increased compensation commensurate with the new hires. Further, these African–American employees have continued to earn salary increases over time. Lisa Lewis Warren, an African–American female, currently earns $39,333. Bessie Nkonge, an African–American female hired one month after Westry, now earns $50,000, a 103% increase from her starting salary. In addition, an African–American male is the highest-paid Computer Consultant II, and an African–American female is the highest-paid Computer Consultant III. (*See* Aff. of Rodney E. Harrigan ¶ 16.) African–American males also occupy high-level positions such as Vice Chancellor for Information Technology and Telecommunications, Chief Technology Officer, and Director of Telecommunications Services. (Harrigan Aff., Ex. 1.) Westry does not submit any specific evidence demonstrating that NC A & T would have denied him an in-range salary adjustment comparable to the salaries of Caucasians and females because he is an African–American male. *See Harden v. Southwark Metal Mfg. Co.*, No. CIV.A.99–4666, 2002 WL 31194220 at *7–8 (E.D.Pa. Oct.2, 2002) (granting summary judgment for defendant on wage discrimination claim where defendant attests to merit raises given to African–American, Hispanic, White, and Asian employees alike and plaintiff can provide no specific evidence of discriminatory animus). No reasonable jury could find that Westry's inability to obtain a pay increase is the result of race or sex discrimination. Consequently, westry's wage discrimination claim must fail.

### B. Discrimination in Promotion

█ To establish a *prima facie* case of discriminatory failure to promote, Westry must show that: (1) he is a member of a protected group; (2) he applied for the position in question; (3) he was qualified

for the position; and (4) he was rejected for the position in favor of someone not a member of the protected group under circumstances giving rise to an inference of unlawful discrimination. *Alvarado v. Bd. of Trs. of Montgomery Cmty. Coll.*, 928 F.2d 118, 121 (4th Cir.1991).

██ Westry contends that he suffered discrimination in promotion opportunities on two instances. The first instance concerns the Help Desk Coordinator position. Westry claims that for awhile he assumed responsibilities associated with the Help Desk. Later, when westry was not performing the Help Desk duties. Karim offered the responsibilities to any Computer Consultant I who would volunteer to do them. Westry did not volunteer. Charles David Weaver, a Caucasian male hired in 1999, was subsequently given the title of Help Desk Coordinator along with a 10% pay increase. Because Westry did not volunteer to assume the duties at the Help Desk, he cannot be said to have "applied" for the position. Thus, Westry has not satisfied the second prong of his *prima facie* case in regard to the Help Desk promotion.

Westry also asserts that NC A & T discriminated against him by failing to promote him to a vacant Computer Consultant III position in October 2000. Westry takes issue specifically with the amount of notice given about this vacancy. NC A & T maintains that it distributed announcements about the opening to each division on campus, but Westry argues

that he never saw the notice and that it was not posted in his department. However, westry does not dispute that NC A & T posted a notice about the open Computer Consultant III position for at least a week on the university website and on the Human Resources bulletin board. Thus, Westry had access to information about the vacancy but never applied for the position.

██ A plaintiff may establish a *prima facie* case of employment discrimination without applying for the position at issue if he shows that the employer's promotions policy was "informal and subjective" or "vague and secretive." *Lockridge v. Bd. of Trs.*, 315 F.3d 1005, 1010 (8th Cir.2003). In the instant case, no reasonable factfinder could conclude that NC A & T's practice of posting job opportunities on the university website and the Human Resources bulletin board was informal or secretive. A plaintiff also may establish a *prima facie* case of discrimination without applying for a position by demonstrating that his employer consistently discriminated when making promotion decisions. *See Int'l Bhd. of Teamsters v. United States*, 431 U.S. 324, 365, 97 S.Ct. 1843, 52 L.Ed.2d 396 (1977); *Lockridge*, 315 F.3d at 1010. In the instant case, Westry cannot show that his application would have faced "certain rejection" due to a policy of discriminatory promotion. *See Lockridge*, 315 F.3d at 1011. Though NC A & T hired Dingess, a Caucasian male, he was the only applicant for the job.[2] In addi-

---

**2.** To support his claim that Dingess was hired because he was Caucasian, Westry directs the court's attention to his affidavit and the affidavit of another employee, John Hayes. Both affiants state that Dingess told Westry that he already had the position of Computer Consultant III before he officially received it and that he would be receiving only a "courtesy interview." (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Pl.Ex. 5, Pl. Aff. ¶ 6; Pl.Ex. 11. Hayes Aff. ¶ 3.) Whether or not this hearsay evidence is considered, Westry has not stated

a *prima facie* case of discriminatory failure to promote because he did not apply for the Computer Consultant III position and does not demonstrate that this conversation discouraged him from applying. (Pl.'s Mem. Opp'n Def.'s Mot. Summ. J., Pl.Ex. 5, Pl.'s Aff. ¶ 5 ("I did not apply for the Computer Consultant III position in September, 2000, because the position was never posted in the department . . . .").) In addition, Westry does not show that this conversation is indicative

tion, Westry has produced no evidence that he would face race or sex discrimination had he applied. In fact, the employees occupying the highest-paid Computer Consultant II and III positions are an African–American male and female. (Harrigan Aff. ¶ 16.)

Given these facts, Westry cannot claim that NC A & T denied him the Computer Consultant III promotion based on his race or sex. He did not apply for the position, the position was advertised sufficiently to put employees on notice, and he has produced no evidence that NC A & T would not have considered him had be applied for the job. *See Lockridge,* 315 F.3d at 1010–12 (affirming summary judgment for defendant when plaintiff, an African–American male, sued a university for discriminatory failure to promote but did not apply for the officially-posted position and did not show that the university had a consistent practice of refusing to promote African–American males); *Porter,* 2001 WL 736753, at *6–7 (granting summary judgment for defendant on failure to promote claim where plaintiff did not show that he applied for a position and was rejected, that manager had a duty to consider him despits his unwillingness to apply, or that defendant had a policy of hiring only whites for the position).

Further, though NC A & T has announced numerous openings for computer personnel, Westry has applied for only one promotion. He was selected to interview for the position, but failed to complete the application process by declining the interview. Because a reasonable jury could not find that Westry's inability to obtain a promotion was the result of discrimination, Westry's claim of discriminatory failure to promote cannot succeed.

of consistent race or sex based discrimination in promotion opportunities at NC A & T. *See*

## CONCLUSION

Westry has failed to show that NC A & T discriminated against him on the basis of race or sex. There is no evidence demonstrating that the university's compensation policy is discriminatory or that Westry's inability to receive pay increases at the same rate as other employees was the result of discriminatory animus against him. Likewise. Westry has not demonstrated that NC A & T failed to promote him because he is an African–American male. Therefore, for the reasons set forth in this opinion, the court will grant NC A & T's motion for summary judgment.

An order and judgment in accordance with this memorandum opinion shall be entered contemporaneously herewith.

### ORDER and JUDGMENT

For the reasons set forth in the memorandum opinion filed contemporaneously herewith,

IT IS ORDERED AND ADJUDGED that Defendant's motion for summary judgment [Doc. #25] is **GRANTED** and this civil action be, and the same hereby is *DISMISSED* with prejudice.

*Lockridge v. Bd. of Trs.,* 315 F.3d 1005, 1011 (8th Cir.2003).